CITY OF JAMESTOWN, a Municipal Corporation, Plaintiff and Respondent,

v.

Esther MIEMIETZ and Frank Miemietz, Defendants and Appellants.

No. 7818.

Supreme Court of North Dakota.

April 6, 1959.

George E. Duis, Fargo, for defendants and appellants.

Mackenzie & Jungroth, Jamestown, for plaintiff and respondent.

Aylmer, Butts & Moran, Jamestown, Kenneth M. Moran, Jamestown, amicus curiae.

TEIGEN, Judge.

The plaintiff, the City of Jamestown, seeks by civil action to abate a public nuisance and to compel the defendants to remove an obstruction from a public street in the city. It is alleged that the defendants had constructed a dwelling house that extends into 14th. Avenue S. E., a distance of approximately 34½ feet. That the plaintiff had made numerous demands upon the defendants to remove the obstruction and that the location of the defendants' dwelling or building upon the said street is in violation of the ordinances of the city and the law of North Dakota.

The amended answer alleges facts upon which the defendants predicate a claim of adverse possession and a claim of equitable estoppel, and the defendants counterclaim for damages for negligence if the court finds for the plaintiff. The reply is a general denial. At the trial, judgment was entered in favor of the plaintiff and denying the defendants' counterclaim. The defendants appeal from the judgment.

The plat of Dunstan's First Addition to the City of Jamestown was duly filed for record in the office of the register of deeds of Stutsman County, North Dakota, on December 20, 1881, at 1:30 p. m. and there duly recorded in Book A of Plats on page 17. According to the plat 14th. Avenue S. E., which the defendants' property in question abuts, has a width of 80 feet and runs northerly and southerly along the west line of Block 5 in which block is located defendants' Lot 5 and upon which lot a portion of the defendants' said dwelling is located, the remaining portion thereof extending out into said 14th. Avenue Southeast a distance of 34½ feet. According to the evidence the defendants' house is 38 feet in length. Therefore it appears 3½ feet thereof is located upon the defendants' property. The record title owner of the lot in question is the defendant, Esther Miemietz, and the defendant, Frank Miemietz, is her husband. The evidence indicates that the defendants purchased the property and moved into it in the year 1938. At that time it consisted of a two room dwelling, 12 x 26 feet, resting on rocks. The house was not moved and in the year 1938 or 1939, the defendants dug and completed a basement under it. In the year 1950 the defendants added to the house an addition 12 x 26 feet in size, making the overall structure, 24 feet in width, 26 feet long. For this they made application for a building permit to the proper officers of the City of Jamestown. The application for building permit in its language and on a drawing contained thereon, places the original structure and the proposed addition, within the confines of said Lot 5 in accordance with the ordinances of the City of Jamestown. The building permit was granted. The defendants testify that at the time of making application for said building permit the City Engineer of the plaintiff city was present upon the premises in question, and that although no measurements or survey was made the defendants testified that they, specifically, asked the said city engineer whether or not the location of the structure was "far enough back." The city engineer denies that he was upon the premises at the time application for a building permit was made, or that he was asked the question.

The defendant, Frank Miemietz, on direct examination testified relative to the alleged conversation as follows:

"Q. Before you improved your house in 1940, did you have a conversation with the city engineer? A. We got the city engineer out there in 1950, and we stood in front of the house, the little one, and I says, 'This is a 12 x 26,' and I says, 'I want to know if I am far enough back,' and I

says, 'I don't care how far south or how far north, I've got that, but I want to know if I am far enough back because it is easier to move the little place than to move after I build on,' and I says, 'I want to build on a 12 x 26 onto it,' He says, 'What side,' I said, 'The South,' and I says, 'I am going to put a piece on the back, it is going to be either 12 x 12 or 10 x 12, I don't know which.' He says, 'Leave that part go and give us this south piece and then you can add on that other piece.' I drew a map of that 12 x 26 and he says, 'Come up and get your permit,' so we did, and we improved it."

It appears that the correct year is 1950, as the building permit referred to is in evidence and is dated 1950.

The defendant, Esther Miemietz, on direct examination testified as follows:

"Q. Mrs. Miemietz, I am going to try to shorten this a great deal. You heard what your husband testified to? A. Yes.

"Q. And can you ratify and say that the things he said are true? A. Yes.

"Q. And you know that the city engineer came out before? A. Yes.

"Q. That he looked the property over? A. Yes, I was out there with him."

Thus it appears that the defendants, in their minds, questioned the location of their house upon the lot before building the addition.

Thereafter, in the year 1950, the city engineer had occasion to survey the street for the purpose of locating street lights, and testified that at that time he determined that defendants' dwelling was located out in the street and informed the defendants thereof. This is denied by the defendants. This was not a complete survey, however. Subsequently, and to wit, in 1954, a more complete survey was made, by the city, for the purpose of installation of sanitary sewer and water mains and in locating the sanitary sewer mains it was necessary to survey a line in the center of the street in compliance with city ordinance. In making this survey it was found that the center of the street was only 5½ feet from the front of defendants' dwelling and again the defendants were advised by the city engineer that their property was partially located in the street. Thereafter, the defendants obtained a surveyor at their own expense who surveyed the property in question and confirmed the city engineer's findings. Thus there is no dispute as to the location of the dwelling with respect to the street.

During all of the times since the defendants acquired the property in question, 14th. Avenue Southeast, in front of their home, had been used by the traveling public and that a trail or path extended past their property. However, this was not graded nor was it improved except that it was bladed in summer and snow removed in winter by the city, and thus kept in condition to permit such travel.

The defendants are also the owners of Lots 2, 3, 4, and 6 of said block. The right-of-way of a Northern Pacific Railroad branch line bisects this property and runs northwesterly and southeasterly, and as a result thereof the north line of said Lot 5 has a depth of 62 feet and the south line thereof a depth of 110 feet, whereas the depth of said lot prior to deducting the said railroad right-of-way was 140 feet.

Fourteenth Avenue Southeast in the area in question has not been vacated by statutory proceedings.

We have summarized all of the relevant evidence. It is undisputed that 14th. Avenue Southeast was dedicated as a public street by the filing of the plat in question. The plaintiff must prevail unless the appellants succeeded in establishing their defense of adverse possession or

the doctrine of equitable estoppel, and they have the burden of proof. Grandin v. Gardiner, N.D., 63 N.W.2d 128; Rovenko v. Bokovoy, 77 N.D. 740, 45 N.W.2d 492; 1 Am.Jur. 925, Section 237; 19 Am. Jur. 852, Section 198; 31 C.J.S. Estoppel § 160, p. 454.

The defendants entered into possession of the property in question in 1938. The original dwelling had been placed thereon in its present location some years prior thereto. With the purchase of the property the appellants received an abstract of title which consisted in part of a map alleged to have been drawn from the Northern Pacific Railway Company's map showing Lot 5 of Dunstan's First Addition to Jamestown, North Dakota, and the Northern Pacific Railway Company's branch line and right-of-way superimposed thereon. According to this map the appellants claim their dwelling would be contained within Lot 5 providing measurement is made from the boundary line of the said railway right-of-way. There is no evidence that this map is on file or of record in the office of the register of deeds. There is no evidence of its source whatsoever, except that it was attached to the abstract of title of the property in question and received by the defendants when they purchased the land. This map is wholly unsatisfactory as evidence. There is no indication in the testimony or the record of the case as to whether Lot 5 is incorrectly placed on said plat or that the railroad right-of-way is incorrectly placed, but it is evident that there is a difference between the map as drawn and attached to the abstract and the original plat of Dunstan's First Addition as platted, filed and recorded by the owner thereof in 1881 and on file in the office of the register of deeds. However, there is no evidence that appellants' house is entirely within Lot 5 when located on this map.

The defendants argue that by virtue of the Northern Pacific Railway Company's map as attached to their abstract of title they entered into possession under a claim of title founded upon a written instrument and that they and their predecessors had so occupied the premises more than twenty years prior to the commencement of this action and thus they claim that they have held adversely to the city for a period of more than twenty years. The defendants' copy of the Northern Pacific Railway Company's map contains no description or descriptive data whatsoever. It is merely a drawing, and at the bottom thereof is typed the following:

"Drawn from Northern Pacific Railway Company's map, Block 5, Dunstan's Addition to Jamestown, N. D."

The abstract of title to which this map is attached was received in evidence without objection. The map referred to and contained therein is not officially a part of said abstract. The abstractor in his certification certifies to entries No. 1 to 43. The map in question precedes Entry No. 1 and, in fact, is given no number and although the abstract of title having been prepared by a regular bonded abstractor is admissible in evidence, see Section 43–0122 1957 Supplement to NDRC 1943, nevertheless, the said map is not a part of the official abstract.

The abstractor's copy of the Northern Pacific Railway Company's map would not have been admissible as evidence in this case if objection had been made thereto. The evidence reflects the original map was made in 1883 and although ancient maps are held in high regard by the courts, not every ancient map is admissible in evidence. One recognized rule is that an ancient map made by a private person, or as to which no official authorization or recognition appears, is inadmissible. See 8 Am.Jur. 819, Sec. 103; 11 C.J.S. Boundaries § 113, p. 709, and Annotated Cases, 1916C, 178 and 180.

It nevertheless appears that the defendants and their predecessors did, as a matter of fact, occupy the space in the street for a period of more than twenty years prior to the commencement of this action and the

question remains unsolved as to whether or not such possession is adverse to the municipality.

■ The general rule is that, in the absence of a statute to the contrary, the title to streets and alleys is held by the municipality in trust for the public, not in a proprietary capacity, and a municipality is without power to alienate the same, regardless of whether the corporation owns the fee or has merely an easement and it holds as trustee for the public. Section 40–5005 NDRC 1943; 25 Am.Jur. 428, Section 133; 39 C.J.S. Highways § 136, p. 1071; McQuillin Municipal Corporations, 3rd Ed. Vol. 10, 594, Section 30.36.

■ By the great weight of authority a municipality cannot be divested of the title of its streets held in trust for public use by adverse possession for the prescriptive period. 64 C.J.S. Municipal Corporations § 1749, p. 179; 1 Am.Jur. 850, Section 106; McQuillin Municipal Corporations, 3rd. Ed. Vol. 11, 93, Section 30.179. We think this is a sound rule and adhere to it.

Next the appellants urge that if it is determined that the adverse possession statutes may not run against the city, that such city may, nevertheless, be estopped, thus precluding the right of the city to assert title and the right to prevail in this action.

The appellants urge abandonment and non-use of the street, but the evidence clearly shows that a portion of the street has been used all along. It was not improved to its full 80 feet of width as provided by the dedication. That, however, a travel area did exist along the westerly side thereof which had been maintained by the city, was kept bladed and snow removed therefrom for an undetermined length of time before the commencement of the action and used by the public. It cannot be said that there is any evidence of its abandonment by non-use, and we do not so find.

"Filing of plat constitutes offer by owner to dedicate to public use streets and avenues shown thereon, and such dedication is completed by action on behalf of public, in using same, or action of public authorities." Welsh v. Monson, N.D., 79 N.W.2d 155; 64 C.J.S. Municipal Corporations § 1676, p. 54; 25 A.J. 410, Sec. 112.

■ The appellants, owners of the lots in question, were not the platters of the property. There had been no withdrawal of the plat and the owner dedicator had sold the property in question. There had been no vacation of the avenue.

"A statutory dedication by the filing of a plat, and the sale of lots by the owner with reference thereto, can be withdrawn only by a vacation of the plat under the statute." Ramstad v. Carr, 31 N.D. 504, 154 N.W. 195, L. R.A.1916B, 1160.

■ Appellants further contend that the city is equitably estopped from maintaining its action on the ground that verbal authorization was given by the city engineer to build an addition onto the dwelling of the appellants without moving the original dwelling from its location. The city engineer denies that he was upon the premises as claimed by the appellants or that there had been any discussion with him relative to location except the map drawn on the application for a building permit, which shows the locations of the old dwelling and the proposed annexation to be completely within the confines of Lot 5 and set back from the lot line the required distance. Each of the appellants, however, contend that the city engineer was present and upon the premises and that the conversation heretofore set forth took place. It is agreed, however, that there was no survey made by the city engineer at that time and we find that there was no obligation imposed by statute or ordinance to require such a survey to be furnished by the city in connection with the making of application for a building permit, and no element

of fraud appears. It is apparent from the appellants' testimony, as hereinbefore set forth, that they had some doubts as to the location of their dwelling, and questioned whether or not it was "far enough back." According to the appellants' testimony they received no affirmative reply from the city engineer, and the appellants nevertheless went ahead with the proposed construction. In other words, being uncertain as to the exact line, they were willing to take the chance of an improvement being made in the future. This comes far from the good faith required in these cases to constitute ground upon which to predicate an estoppel. 19 A.J. 739, Sec. 86; 31 C.J.S. Estoppel § 78, p. 283; Oliver v. Synhorst, 58 Or. 582, 109 P. 762, 115 P. 594. Subsequently the appellants constructed an additional annexation to the rear or east of their dwelling. Thus the overall size is now 24 x 38 feet. The record does not disclose when the last annexation was made or whether or not the building permit was obtained therefor except that it is indicated in the testimony of the appellants that this proposed construction was tentatively discussed with the city engineer at the same time, but it was not included in the application for a building permit. There is no record showing that a building permit was obtained for the placement, either by construction or moving, of the first building upon the land in question.

It appears to this court that the appellants had sufficient knowledge to put them on inquiry. This is demonstrated by their testimony. The area is located toward the edge of the city and was not developed for a number of years following the platting and that there was no cause or reason for the city to lay out the streets to its full permissible width until later development. The appellants, however, before constructing their annexation made no move to establish the boundary lines although this could easily have been done by a survey as the monuments are in place. The appellants, questioning their location, did not use the means at hand to learn the truth.

To require a city to open and improve all its streets at once without reference to the need of such improvement at the peril of forfeiting them would be absurd as a matter of public policy and would, if carried out, prove an intolerable burden to those owning lots on remote and unfrequented streets. Oliver v. Synhorst, 58 Or. 582, 109 P. 762, 115 P. 594.

The appellants were not induced to make the expenditure of their improvements by any acts of the city or its officers.

The plaintiff city was duly organized and existing under the laws of the State of North Dakota, and possessed the general powers set forth in Chapter 40–05 of the NDRC 1943. It had passed an ordinance, Section 18 of Chapter 18, on page 84 of Ordinances, City of Jamestown which provided as follows:

"It shall be unlawful for any person to build, erect, or construct or maintain any house, barn, shed or other building of any kind or any fence or other obstruction in all or in part upon any street, alley, avenue or other public place or ground within the city."

It could require the removal of that which was erected in violation of its ordinance and if the obstruction occupies an area dedicated for public use, the public is entitled to the use of the whole of such street. Kennedy v. City of Fargo, 40 N.D. 475, 169 N.W. 424; Ashley v. Ashley Lumber Company, 40 N.D. 515, 169 N.W. 87.

Section 40–0501 NDRC 1943 provides:

"The governing body of a municipality shall have the power:

"(44) Nuisances—To declare what shall constitute a nuisance and to prevent, abate, and remove the same."

Thus the city by virtue of the powers granted unto it by statute has adopted an ordinance providing that it shall be unlawful for any person to place an obstruction in all or in part upon any street. By statute

the municipality was given the right to abate the same by civil action. See Section 42-0107 NDRC 1943.

Here the public is merely seeking to assert its rights. Section 42-0114 NDRC 1943 provides that no lapse of time can legalize a public nuisance amounting to an actual obstruction of public rights.

 Further, it is well established that a municipal corporation is not estopped by the acts of its officers when they exceed their powers. Williams v. City of Fargo, 63 N.D. 183, 247 N.W. 46.

> "Persons dealing with city officers must, at their peril, ascertain officers' scope of authority." Williams v. City of Fargo, supra.

 We have found the respondent city has no legal right to surrender its platted streets to private persons, but on the contrary, has a duty to remove public nuisances therefrom; that the appellants did not hold adversely to the city and acquired no right by prescription and that the city is not equitably estopped from maintaining it's action. There being no negligence attributable to the plaintiff city, the appellants having acted at their own peril, there is no cause of action for damages. We do not, however, pass on the question of whether or not a city may have been liable in damages if negligence had been proved. An adjoining owner may be compelled to remove an obstruction from street at his own expense. 64 C.J.S. Municipal Corporations § 1750(c), p. 182.

The judgment of the District Court is affirmed with direction to refix time. The period until Sept. 1, 1958, in which the defendants were ordered to remove the building is extended to a date to be determined by the District Court upon application of the plaintiffs and notice to the defendants when entering its order for judgment upon remittitur.

[1] SATHRE, C. J., and BURKE and MORRIS, JJ., concur.