Albert GRUEBELE, Plaintiff-Appellee,

v.

MOTT GRAIN COMPANY, Defendant-Appellant.

Civ. No. 9400.

Supreme Court of North Dakota.

Feb. 16, 1978.

Pearce, Anderson, Thames & Durick, Bismarck, for defendant and appellant; argued by William R. Pearce, Bismarck.

Reichert, Howe, Hardy, Moench, Galloway & Jorgensen, Dickinson, for plaintiff and appellee; argued by Albert J. Hardy, Dickinson.

PAULSON, Justice.

This is an appeal by the defendant, Mott Grain Company, from the judgment of the Hettinger County District Court entered on July 22, 1977, awarding the plaintiff, Albert Gruebele, payment of $17,127.93, plus interest, on two grain contracts; together with costs of the action.

At the trial, Mott Grain Company admitted execution of the two grain contracts, but raised the affirmative defense of equitable estoppel, claiming that Gruebele should be estopped from asserting payment due and owing on the contracts. The trial court concluded that Mott Grain Company had failed to prove the essential elements of its estoppel defense, and judgment was entered for Gruebele on the contracts. Mott Grain Company asserts on this appeal that the trial court's conclusion regarding the estoppel defense was based upon clearly erroneous findings of fact, and it requests this court to reverse the judgment and to direct that judgment be entered for Mott Grain Company.

During May of 1974, Gruebele and Mott Grain Company executed a contract wherein Gruebele agreed to deliver to Mott Grain Company 3,002 bushels of barley, for which Mott Grain Company agreed to pay a total price of $6,754.50. During June of 1974, Gruebele and Mott Grain Company executed a second contract wherein Gruebele agreed to deliver to Mott Grain Company approximately 2,356 bushels of spring wheat, for which Mott Grain Company agreed to pay a total price of $10,373.43. Payment to Gruebele on these two contracts was to be made by Mott Grain Company between January 2 and January 15, 1975. Subsequent to the execution of these two contracts, Gruebele duly delivered the barley and the spring wheat according to the terms of the contracts. During 1974, Mott Grain Company also executed deferred payment grain contracts with twenty-four other persons, and payment on all of these contracts was due during the month of January, 1975.

Prior to October of 1974, Mott Grain Company was owned by three shareholders having equal ownership interests in the company: August Kirschemann, Ben Schaible, and Vernon Baszler. Baszler was the active manager of the elevator operation. During October of 1974, Baszler suddenly disappeared. Subsequent to his disappearance, Baszler's stock was transferred to Schaible and Kirschemann, who are currently the sole owners of common stock in the Mott Grain Company. An audit of Mott Grain Company's books was performed shortly after Baszler's disappearance. Through this audit it was discovered that Mott Grain Company was insolvent and that it had sufficient assets to pay only 46 percent, or less, on the outstanding deferred payment grain contracts due in January of 1975.

Mott Grain Company held a meeting on November 4, 1974, to inform its creditors of the insolvency situation, and Gruebele was among those creditors who attended. At this meeting, Mott Grain Company proposed a plan which it claimed would make it unnecessary for Mott Grain Company to go through voluntary or involuntary bankruptcy proceedings, and would potentially result in each creditor collecting 100 percent of the debt owed to him. Each creditor was asked to accept, in full payment of his grain contract, a 40 percent cash payment in January of 1975, together with shares of preferred stock in Mott Grain Company, as payment for the balance owed on the contract (at $1.00 of preferred stock issued for each $1.00 of outstanding indebtedness). As part of the offer, Mott Grain Company agreed to use 90 percent of its net profit each year to redeem the preferred shares until they had all been retired. The creditors were also informed that the desired results could be obtained only on the condition that every creditor agreed to accept the proposed offer.

It is undisputed by Mott Grain Company that at this meeting at least three or four creditors, including Gruebele, did not agree to the proposed offer, and they individually expressed an intent to seek the advice of legal counsel. There is some conflict in the testimony regarding subsequent communi-

cations which Gruebele had with Schaible and Kirschemann. Nevertheless, Schaible testified that he was aware that Gruebele had not accepted the proposed offer as of January 2, 1975.

Commencing on January 2, 1975, Mott Grain Company began to make 40 percent cash payments and to issue shares of preferred stock in satisfaction of the contracts held by those creditors who had accepted the November 4, 1974, offer. On January 14 or 15, 1975, Gruebele went to the Mott Grain Company elevator and personally demanded payment in full on his two grain contracts from a Mr. Stickel, who was on that date employed as temporary manager of the Mott Grain Company elevator. Stickel refused to make such payment and Gruebele left. On January 21, 1975, Gruebele, through his attorney, sent a written demand for full payment on the contracts to the Mott Grain Company. Gruebele did not receive payment and this action was then commenced.

At the trial, Mott Grain Company raised the defense of equitable estoppel, claiming that Gruebele should be estopped from asserting payment due and owing on the two grain contracts. As a basis for this estoppel defense, Mott Grain Company alleged that Gruebele did not clearly inform it of his intention to refuse the offer proposed at the November 4, 1974, meeting. Mott Grain Company alleged that, as a result of Gruebele's silence, it assumed Gruebele would accept the offer and that it acted in reliance upon this assumption when it satisfied its contractual obligations with the other creditors by making partial cash payments and by issuing shares of preferred stock. The trial court concluded that the essential elements of estoppel had not been proven, and judgment was awarded to Gruebele on the two contracts. Mott Grain Company asserts on this appeal that the trial court's determination that Mott Grain Company failed to prove the essential elements of equitable estoppel was based upon clearly erroneous findings of fact, and that the judgment should be reversed.

The basic elements of equitable estoppel were set forth by this court in the case of *Farmers Cooperative Association of Churchs Ferry v. Cole*, 239 N.W.2d 808 (N.D.1976), in paragraph 4 of the syllabus:

"4. The basic elements of equitable estoppel that must be met as to the person being estopped are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence, the other party or persons; and (3) knowledge, actual or constructive, of the real facts. The elements that must be found as to the person claiming the estoppel are: (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon, of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice."

█ Mott Grain Company had the burden of proof to establish the defense of equitable estoppel against Gruebele. *Aune v. City of Mandan*, 167 N.W.2d 754 (N.D.1969); *City of Jamestown v. Miemietz*, 95 N.W.2d 897 (N.D.1959). This court, on appeal, will not set aside the trial court's conclusion that Mott Grain Company failed to establish the essential elements of its estoppel defense, unless the findings of fact upon which the trial court based its conclusion are clearly erroneous, pursuant to Rule 52(a) of the North Dakota Rules of Civil Procedure. *Fortman v. Manthey*, 248 N.W.2d 821 (N.D.1976).

In its findings of fact, the trial court determined that Gruebele did not mislead Mott Grain Company into believing that he would accept the proposed offer. It is an undisputed fact that, at the November 4, 1974, meeting, Gruebele did not accept the proposed offer and that he stated he want-

ed to obtain legal advice. This initial reservation by Gruebele to the proposed offer should have, in itself, placed Mott Grain Company on notice that Gruebele might never accept the proposed offer. Several days after the November 4, 1974, meeting, Gruebele and his wife talked with Kirschemann and Schaible at the elevator about the proposed offer. There is some dispute as to what was said during this conversation. Gruebele testified that he told Kirschemann and Schaible he wanted to confer with an attorney and that he never indicated he would accept the proposed offer. Schaible testified, on the other hand, that Gruebele stated he would accept the proposed offer if the other creditors did. Gruebele denied making any statement to that effect.

Gruebele also testified that sometime after the November 4, 1974, meeting, but prior to January of 1975, he talked with Schaible in a hotel in Mott at which time Gruebele told Schaible he did not think he would sign the proposed agreement and that "I don't want none of that preferred stock". Gruebele further testified that sometime during December of 1974, Kirschemann stopped Gruebele on the street and asked him to "come over and sign" the proposed agreement. According to Gruebele's testimony, he responded, "no I don't think we'll sign it".

■ Upon a careful examination of the record, we conclude that there was substantial evidence upon which the trial court could have based its finding that Gruebele did not mislead Mott Grain Company, by false statement, conduct, or silence, into believing that Gruebele would accept the November 4, 1974, offer or that he would not demand full payment on his two grain contracts.

In its findings of fact, the trial court also determined that Mott Grain Company did not act in good faith, or change its position, in reliance upon any conduct or statements made by Gruebele. The record clearly reveals, through Schaible's own testimony, that at the time Mott Grain Company began issuing preferred stock and making partial cash payments to those creditors who had accepted the proposed offer, Schaible knew that Gruebele had "not committed" himself to accept the proposed offer.

In the case of *City of Jamestown v. Miemietz*, 95 N.W.2d 897 (N.D.1959), the city brought an action to compel the defendant landowners to remove their dwelling which was encroaching upon a city street and the landowners raised the defense of equitable estoppel. The landowners asserted that the city should be estopped from maintaining the action because the city engineer had authorized the landowners' request to build the addition to their dwelling which encroached upon the city street. This court affirmed the trial court's refusal to impose an equitable estoppel against the city on the ground that the landowners had sufficient knowledge to put them on inquiry that the addition to the dwelling might encroach upon the city street, and had failed to perform a survey or use other means to ascertain the truth. With regard to the estoppel issue, this court stated, in *Miemietz, supra* 95 N.W.2d at 903:

"It is apparent from the appellants' testimony, as hereinbefore set forth, that they had some doubts as to the location of their dwelling, and questioned whether or not it was 'far enough back.' According to the appellants' testimony they received no affirmative reply from the city engineer, and the appellants nevertheless went ahead with the proposed construction. In other words, being uncertain as to the exact line, they were willing to take the chance of an improvement being made in the future. This comes far from the good faith required in these cases to constitute ground upon which to predicate an estoppel."

■ In the instant case, as in *Miemietz, supra*, Mott Grain Company's actions fall far short of the good faith reliance required as a ground upon which to predicate an equitable estoppel. Mott Grain Company had sufficient knowledge of Gruebele's reluctance to accept the proposed offer to put it on inquiry that Gruebele might not ac-

cept the offer. Nevertheless, Mott Grain Company made no attempt to obtain a firm acceptance of the proposed offer from Gruebele prior to issuing the preferred stock and making partial cash payments to the other creditors. Instead, Mott Grain Company took a chance that Gruebele would eventually accept the proposed offer when he realized that every other creditor had done so.

We hold that the trial court did not commit error when it concluded that Mott Grain Company failed to prove the elements necessary to impose an equitable estoppel against Gruebele. The findings of fact upon which the trial court predicated its conclusion are supported by substantial evidence in the record and are not clearly erroneous. Accordingly, the judgment of the trial court is affirmed.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.