**PETERSON MECHANICAL, INC., Plaintiff and Appellant,**

v.

**Lowell NERESON, Defendant and Appellee,**

and

**DuWayne L. Engness, Vernette J. Engness, and S.B.R. Associates, a North Dakota Limited Partnership, Defendants.**

**Civ. No. 900242.**

Supreme Court of North Dakota.

Feb. 21, 1991.

Solberg, Stewart, Boulger & Miller, Fargo, for plaintiff and appellant, argued by Erik R. Johnson, Fargo.

DeMars & Turman, Fargo, for defendant and appellee, argued by Jeff A. Bredahl, Fargo.

MESCHKE, Justice.

Peterson Mechanical, Inc. appealed from a judgment dismissing its suit against Lowell Nereson to foreclose a mechanic's lien. We affirm in part, reverse in part, and remand for further proceedings.

Nereson was purchasing a building in Fargo on contract for deed from DuWayne and Vernette Engness. On March 22, 1985, Nereson leased the building to SBR Associates, a North Dakota limited partnership. The lease said:

12. During the term of this Lease, no remodeling shall be done without first obtaining the express written consent of the Owner.

Nereson also agreed to finance about $70,-000 of remodeling to convert the building from a bar into the Japanese-style restaurant that SBR planned to operate. The agreed remodeling work was to be done by CEI Builders, Kramer Electric, A & R Roofing, and Cegla Plumbing.

In addition, on July 19, 1985, SBR and Peterson Mechanical executed a construction contract for more remodeling of the building.[1] Nereson did not consent to this

---

1. The contract covered:
Hood and exhaust systems, heating and air conditioning systems, gas piping to the rooftop heating and air conditioning units, refrigeration piping pertaining to freezer and cooler work, stainless steel modification of used equipment.
The contract listed the price for that work:

Hoods/Exhaust Systems      $35,000.00

contract. SBR later requested minor changes that resulted in a total contract price with Peterson Mechanical of $97,-637.27. Peterson Mechanical furnished $91,208.97 in labor, skill, and materials for remodeling the building through October 31, 1985, without receiving any payments from SBR.

During that time SBR was having difficulty getting financing. In September 1985, SBR asked Darold Peterson, the vice-president of Peterson Mechanical, to "breakout" the heating and air conditioning portion of the contract so that financing could be obtained. Peterson wrote a letter to SBR stating that Peterson Mechanical would provide material and labor for a heating and air conditioning system at the restaurant for $51,222.[2]

Nereson thereafter agreed to furnish $51,222 for payment to Peterson Mechanical. SBR and Nereson executed a lease addendum agreeing that Nereson's payment of $51,222 was conditioned upon Peterson Mechanical executing a mechanic's lien waiver. On November 11, 1985, Nereson paid $51,222 to Peterson Mechanical, who in turn executed a mechanic's lien waiver:

| | |
|---|---|
| Building Heating & Air Conditioning | $49,800.00 |
| Gas Piping to Rooftop HVAC Units | 1,422.00 |
| Refrigeration Piping Pertaining to Freezer and Cooler | 5,600.00 |
| Stainless Steel Modifications | 2,220.00 |

2. The "breakout" letter said:

We will provide material and labor for a heating and air conditioning system at the Shogun for the sum of:
Fifty-one Thousand Two Hundred Twenty-two Dollars—($51,222.00)—
This portion of our proposal does not include:
—Wiring, electrical starters and disconnects
—Any additional structural support for the rooftop units
—Duct chases or soffits
—Plumbing and roofing
—Kitchen equipment installation or hood fire protection
—Kitchen equipment gas piping
—Hoods and exhaust systems
—Refrigeration piping pertaining to freezer and cooler work
—Stainless steel modification of used equipment
This proposal includes the following:

The undersigned acknowledges having received payment of Fifty-one Thousand Two Hundred Twenty-two and no/xxx Dollars ($51,222.00) from Lowell Nereson in full payment of all payments due under a bid dated September 19, 1985, directed to SBR Associates, a copy of which is attached hereto, by the undersigned delivered or furnished to (or performed at)

Lot 8, less the South 30' thereof, in Block 2, of Westrac First Addition to the City of Fargo, County of Cass, and State of North Dakota,

and for value received hereby waives all rights which may have been acquired by the undersigned to file a mechanic's lien against said premises for labor, skill, or material furnished to said premises prior to the date hereof.

At that time SBR owed Peterson Mechanical $91,208.97 on the July 19, 1985 contract. Peterson Mechanical furnished $6,428.30 in labor and materials after November 11, 1985, until the work was finished on April 29, 1986. In December 1985, Peterson Mechanical served SBR, Nereson, and the Engnesses with a notice of intent to claim a mechanic's lien and recorded the notice with the register of deeds. SBR

—All heating and cooling permits
—One (1) 12½ ton cooling, 300 MBH gas heating rooftop unit with economizer, curb and thermostat and subbase
—One (1) direct fired 810 MBH gas heating rooftop unit with ventilation controls, a 15 ton capacity DX coil and a 15 ton capacity condensing unit
—Gas piping from the gas meter to the two rooftop units
—Upgrading the air conditioning and heating of the two existing lower level electric furnaces, one of which will be relocated
—New refrigerant line piping from the two furnace DX coils to their respective condensing units
—Addition of an economizer control system for the electric furnace serving the north side of the lower level
—Installation of four (4) toilet exhaust systems to meet Code requirements
—All lower level ductwork serving the lounge and solarium areas
—All ductwork (with external insulation) above the ceiling for the first floor area
—All grilles, registers and diffusers for the first floor and lower levels

paid Peterson Mechanical $20,000 on January 14, 1986. That payment together with Nereson's $51,222 payment left a $26,415.27 balance due on the July 19, 1985 contract. A mechanic's lien statement and account of demand due for the balance of $26,415.27 plus interest was recorded with the register of deeds and served on SBR, Nereson, and the Engnesses in November 1987.

SBR's restaurant was unsuccessful, and SBR did not pay Peterson Mechanical the balance due on the July 1985 contract. Peterson Mechanical sued SBR, Nereson, and the Engnesses to foreclose the mechanic's lien. SBR did not defend and filed bankruptcy. Peterson Mechanical and the Engnesses stipulated that the Engnesses' interest in the property was superior to Peterson Mechanical's mechanic's lien. *See Mid–America Steel, Inc. v. Bjone*, 414 N.W.2d 591 (N.D.1987). Nereson claimed that Peterson Mechanical waived its mechanic's lien for all labor and materials furnished before November 11, 1985.

The trial court found that Peterson Mechanical was estopped from asserting a mechanic's lien against Nereson for labor, skill, and materials furnished before November 11, 1985. The court dismissed the foreclosure suit. Peterson Mechanical appealed.

■ A party entitled to a mechanic's lien may waive that right by a signed writing [NDCC 35–27–02; *see* NDCC 1–01–08; 1–02–28], or may be estopped to assert the mechanic's lien by acts or conduct constituting estoppel. *Sussel Co. v. First Federal Savings and Loan Association of St. Paul*, 304 Minn. 433, 232 N.W.2d 88 (1975); *R.D. Reeder Lathing Co. v. Allen*, 66 Cal.2d 373, 57 Cal.Rptr. 841, 425 P.2d 785 (1967); 53 Am.Jur.2d, *Mechanic's Liens*, § 311 (1970). Although waiver and estoppel are closely akin, there are well-recognized distinctions between the two. 28 Am. Jur.2d, *Estoppel and Waiver*, § 30 (1966). A waiver requires voluntary and intentional relinquishment of a known right or privilege. *Peterson v. Front Page, Inc.*, 462 N.W.2d 157 (N.D.1990). Estoppel arises apart from any intention on the part of the one estopped. 28 Am.Jur.2d, *Estoppel and Waiver*, § 30; 53 Am.Jur.2d, *Mechanic's Liens*, § 290. Estoppel involves conduct by both parties, and prejudice is one of the essential elements of estoppel, while waiver depends upon what one party intended to do, regardless of the other party. 28 Am. Jur.2d, *Estoppel and Waiver*, § 30; 53 Am.Jur.2d, *Mechanic's Liens*, § 290. Either waiver or estoppel precludes the assertion of a mechanic's lien.

■ In this case, the trial court construed the mechanic's lien waiver in terms of promissory estoppel. The elements of promissory estoppel are: 1) a promise which the promisor should reasonably expect will cause a change of position by the promisee; 2) a substantial change in the promisee's position through action or forbearance; 3) justifiable reliance on the promise; and 4) injustice which can only be avoided by enforcing the promise. *Lohse v. Atlantic Richfield Co.*, 389 N.W.2d 352 (N.D.1986); *O'Connell v. Entertainment Enterprises*, 317 N.W.2d 385 (N.D.1982). *Compare* Folsom, *Reconsidering the Reliance Rules: The Restatement of Contracts and Promissory Estoppel in North Dakota*, 66 N.D.L.Rev. 317 (1990). Estoppel is generally a question of fact. *Gruebele v. Mott Grain Co.*, 262 N.W.2d 747 (N.D.1978); *Fortman v. Manthey*, 248 N.W.2d 821 (N.D.1976). The trial court factually found that Peterson Mechanical was estopped.

■ Our review of a trial court's findings of fact is governed by the "clearly erroneous" standard of NDRCivP 52(a). *Miller Enterprises v. Dog N' Cat Pet Centers*, 447 N.W.2d 639 (N.D.1989). A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* In applying the "clearly erroneous" standard of review, we do not substitute our judgment for that of the trial court. *Id.* The trial court's finding that the elements of promissory estoppel were present in this case is not clearly erroneous.

■ The trial court found that Peterson Mechanical promised Nereson that $51,222 was full payment for remodeling Nereson's property and that Peterson Mechanical promised to waive all rights to file a mechanic's lien against that property for any labor, skill, or materials furnished before November 11, 1985. The trial court also found that when Nereson paid Peterson Mechanical $51,222, he did not know or have constructive knowledge that Peterson Mechanical had already furnished labor, skill, and materials in excess of $51,222. Although Darold Peterson testified that he intended to waive his right to a mechanic's lien for only $51,222, the trial court's findings on the meaning of the written waiver are to the contrary. A trial court's findings of fact on documentary evidence is governed by NDRCivP 52(a). *Monson v. Dwyer*, 378 N.W.2d 865 (N.D.1985). We are not left with a definite and firm conviction that the trial court made a mistake in finding that Peterson Mechanical promised to waive a mechanic's lien for all labor, skill, or materials in excess of $51,222 furnished before November 11, 1985, and that Peterson Mechanical could reasonably expect the promise would cause Nereson to change his position.

Nereson's lease with SBR required Nereson's written consent for remodeling. Although Nereson consented to remodeling by other contractors he did not consent in writing to the remodeling done by Peterson Mechanical. Darold Peterson testified that he did not know that SBR was leasing the building from Nereson when the July 19, 1985 contract was executed. Myron Strand, a general partner in SBR, testified that SBR executed the contract without Nereson's consent or knowledge. Nereson testified that he allowed SBR to continue to lease the premises in reliance on the mechanic's lien waiver and that if he had known about the July 19, 1985 contract between SBR and Peterson Mechanical, he would have deemed the lease agreement breached and would have evicted SBR.

The trial court found that SBR did not obtain Nereson's consent to the remodeling by Peterson Mechanical, and that when Peterson Mechanical and SBR executed the July 19, 1985 contract, Darold Peterson did not know or investigate whether SBR was the owner of the premises. The trial court also found that when Nereson paid Peterson Mechanical on November 11, 1985, he did not have actual or constructive knowledge of the July 19, 1985 contract or that Peterson Mechanical had furnished a total of $91,208.97 in labor, skill, and materials. The trial court found that if Nereson had not relied upon the lien waiver, he could have evicted SBR and cut his losses. Moreover, the trial court's memorandum opinion explained that it was in "Nereson's best interest to keep the remodeling project going, to get the ... [r]estaurant off the ground, and to get some return on his investment." [3] The trial court's findings demonstrate that Nereson's payment of the $51,222 was a substantial change in his position and that he justifiably relied upon Peterson Mechanical's promise. We agree with the trial court that, under these circumstances, Nereson would be placed in an unjust position by enforcing a mechanic's lien on the property. We are not left with a definite and firm conviction that the trial court made a mistake in finding that the elements of promissory estoppel were present in this case. The trial court's findings are not clearly erroneous. Peterson Mechanical is therefore estopped from asserting a mechanic's lien for all labor, skill, and materials furnished before November 11, 1985.

■ Peterson Mechanical contends that it contributed $6,428.30 in labor and materials after the mechanic's lien waiver was signed and argues that it was entitled to enforce a mechanic's lien on the property for that amount. Nereson responds that the trial court found that those contributions were for "equipment" and not for "improvements" subject to a mechanic's lien.

---

3. A trial court's memorandum opinion may be used to clarify or explain its findings of fact.

*Stillwell v. Cincinnati Inc.*, 336 N.W.2d 618 (N.D. 1983).

NDCC 35–27–02 gives "[a]ny person who *improves* real estate by the contribution of labor, skill, or materials ... a lien upon the improvement and upon the land on which it is situated ... for the price or value of such contribution." [Emphasis added.] NDCC 35–27–01(2) says:

"Improve" means to build, erect, place, make, alter, remove, repair, or demolish any improvement upon, connected with, or beneath the surface of any land, or excavate any land, or furnish materials for any of such purposes, or dig or construct any fences, wells, or drains upon such improvement, or perform any labor or services upon such improvement; or perform any architectural services, construction staking, engineering, land surveying, mapping, or soil testing upon or in connection with the improvement; or perform any labor or services or furnish any materials in laying upon the real estate or in the adjoining street or alley any pipes, wires, fences, curbs, gutters, paving, sewer pipes or conduit, or sidewalks, or in grading, seeding, sodding, or planting for landscaping purposes, or in equipping any such improvement with fixtures or permanent apparatus.

NDCC 35–27–01(3) says:

"Improvement" means any building, structure, erection, construction, alteration, repair, removal, demolition, excavation, landscaping, or any part thereof, existing, built, erected, improved, placed, made, or done *on real estate for its permanent benefit.* [Emphasis added.]

For a mechanic's lien, these statutes require a person to provide the labor, skill, or materials to "real estate for its permanent benefit."

The trial court found:

Improvements to the real property were financed by the $51,222.00, which Nereson paid. The remainder of the contract was for labor and materials used to purchase and modify equipment.

The trial court's decision did not specifically deal with the labor and materials furnished after the November 11, 1985 waiver.

Findings of fact must be sufficiently stated to allow this court to understand the factual basis for a trial court's decision. *Healy v. Healy,* 397 N.W.2d 71 (N.D.1986). The trial court's findings do not say whether or not the "labor and materials used to purchase and modify equipment" were an "improvement" as that term is defined in NDCC 35–27–01(3). Therefore, we are unable to understand the basis for the trial court's decision about labor and materials furnished after the November 11, 1985 waiver. We remand this case to the trial court for appropriate findings of fact and conclusions of law on that question.

We affirm in part, reverse in part, and remand for further proceedings.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.