1998 ND 61

**DIVERSIFIED FINANCIAL SYSTEMS INC., Plaintiff and Appellant,**

v.

**Simon BINSTOCK aka Sam Binstock, Defendant and Appellee.**

**Civil No. 970190.**

Supreme Court of North Dakota.

March 26, 1998.

T.L. Secrest, of Secrest Law Firm, Hettinger, for plaintiff and appellant.

Mary E. Nordsven, of Howe, Hardy, Galloway & Maus, PC, Dickinson, for defendant and appellee.

MESCHKE, Justice.

[¶ 1] Diversified Financial Systems, Inc. appealed a jury verdict and judgment dismissing Diversified's action against Simon Binstock on his guaranty of a note, and appealed the order denying Diversified's post-trial motion for judgment as a matter of law. We conclude substantial evidence supported the jury verdict that the FDIC's agents waived Binstock's obligation on the guaranty, and we affirm.

[¶ 2] Simon Binstock, who farmed near Regent, had been a longtime customer of First State Bank of Regent. Besides his own borrowings from the Bank, he signed a guaranty to the Bank on a 1989 loan to his son and daughter-in-law, Douglas and Rena Binstock, for a house. The Bank soon failed, and the Federal Deposit Insurance Corporation (FDIC) became receiver of its assets on February 2, 1990. FDIC sought immediate payment of all of Binstock's debts to the Bank. Binstock quickly arranged for a substitute line of credit at another bank to pay his debts at the closed Bank.

[¶ 3] On March 12, 1990, at Regent, Binstock met with agents of FDIC, Brian Holmes and Kenneth Schneck, who identified themselves as "liquidator specialists." Binstock told Holmes and Schneck he had "co-signed" a house note for his son and daughter-in-law, Douglas and Rena, in addition to his own debts. One of the agents checked the Bank's files and told Binstock, "no, I guess you aren't" on another note.

> And then later on when they was preparing all the thing, I told them again, I know I'm a co-signor of that house. Then he said, well, just a minute. So, they went back and they looked into Doug's files and they were in there for quite a spell. And then they come back and they said, no, you just don't worry about it, this is what we'll settle for, and then I said good.

Q. And what did you think that meant?

A. All my notes was settled that had my name on.

Q. And then did you in fact give a check to the FDIC?

A. Yes.

Binstock then wrote a check to the FDIC for $85,812.93 to pay his debts, including a small note that he had co-signed for another child, Lavern, and he left the meeting believing he had paid and settled with FDIC for all his obligations at the Bank.

[¶ 4] On June 18, 1993, FDIC assigned the Douglas and Rena Binstock installment note to Diversified. Diversified did not collect from Douglas and Rena, and sought payment from Binstock on his guaranty.

[¶ 5] Diversified sued Binstock on his guaranty. In his answer, Binstock denied that he

had signed a guaranty on the back of the $22,000 note and, as an affirmative defense, plead that the FDIC agents, at the March 12, 1990 meeting, had "expressly or impliedly agreed to forego any claims" against him on the Douglas and Rena note "in consideration of [his] payment of $85,812.93" when they, "at that time, assured [Binstock] that there were no additional obligations owed by [him] to FDIC." Binstock claimed "[s]uch statements by FDIC constitute[d] a waiver of any additional claims and therefore [Diversified] is estopped from asserting any claim against" him.

[¶ 6] At a jury trial, after both sides rested, Diversified moved for judgment as a matter of law. The trial court denied the motion and submitted the case to the jury with instructions on waiver as recommended by NDJI–CIVIL 1045:

"Waiver" is the voluntary and intentional relinquishment or abandonment of a known, existing right, advantage, benefit, claim, or privilege which, except for the waiver, the party would have enjoyed. The voluntary and intentional relinquishment or abandonment may be shown by express language, by agreement, or by acts or conduct from which that intention to waive may be inferred. Those acts or that conduct may involve neglect or failure to act, when affirmative action is required, that leads the other party reasonably to believe that it was the party's intention so to waive.

Diversified did not object to this instruction. As *Williston Farm Equip., Inc. v. Steiger Tractor, Inc.,* 504 N.W.2d 545, 549 (N.D. 1993) and *Erickson v. Schwan,* 453 N.W.2d 765, 768 (N.D.1990), illustrate, the waiver instruction thus became the law of the case.

[¶ 7] In a special verdict, the jury found Binstock had signed the written guaranty in 1989, and that FDIC agents, at their March 12, 1990 meeting, waived Binstock's obli-

gation on the guaranty. The trial court entered a judgment of dismissal against Diversified on the verdict.

[¶ 8] Diversified timely renewed its motion for judgment as a matter of law and, alternatively, moved for a new trial.[1] The trial court denied Diversified's motions. Diversified appealed the judgment and the order denying its motion for judgment as a matter of law.

[¶ 9] Diversified contends the trial court should have granted it judgment as a matter of law because, on March 12, 1990, Kenneth Schneck, FDIC's liquidating agent, did not know the exact amount of the note guarantied by Simon Binstock, and so could not have knowingly and intentionally waived payment on that guaranty. Diversified's argument proceeds from part of Binstock's testimony that, at the March 12, 1990 meeting, he had thought Douglas and Rena's "house note" was a $7,000 one and he had not specifically mentioned a $22,000 note to FDIC's liquidating agents.

[¶ 10] "A post-trial motion for judgment as a matter of law seeks judgment notwithstanding the verdict." *Blessum v. Shelver,* 1997 ND 152, ¶ 16, 567 N.W.2d 844. A motion for judgment notwithstanding the verdict is addressed to the sound discretion of the trial court, and the court's ruling on it will not be overturned on appeal unless the court manifestly abused its discretion. *Suburban Sales & Svc., Inc. v. White,* 326 N.W.2d 873, 877 (N.D.1982). In considering the motion, "the trial court must apply a rigorous standard with a view towards preserving a jury verdict, and so must we on review." *Blessum,* ¶ 16. As *Okken v. Okken,* 325 N.W.2d 264, 267 (N.D.1982), explained, "[t]he trial court must give proper deference to the jury's evaluation of the evidence and its judgment of the credibility of witnesses."

---

1. The trial court may grant a motion for judgment as a matter of law against a litigant if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." N.D.R.Civ.P. 50(a)(1). A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. N.D.R.Civ.P. 50(a)(2). If the motion is made at the close of all

the evidence and denied, "the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." N.D.R.Civ.P. 50(b). "Such a motion may be renewed ... not later than 10 days after notice of entry of judgment." N.D.R.Civ.P. 50(b).

[¶ 11] The trial court must view the evidence in the light most favorable to the litigant against whom the motion is made, without weighing the evidence or judging the credibility of the witnesses, to determine if the evidence leads to but one reasonable conclusion. *Pioneer Fuels, Inc. v. Montana–Dakota Utils. Co.*, 474 N.W.2d 706, 709 (N.D. 1991). The litigant against whom a motion for judgment as a matter of law is made must be given the benefit of all reasonable inferences from the evidence. *Suburban,* 326 N.W.2d at 877. The real question is whether the evidence is legally sufficient for the jury to properly find a verdict for the litigant against whom the motion was made. *Pioneer Fuels, Inc.,* 474 N.W.2d at 709. "Where the evidence is in conflict and reasonable men might draw different conclusions on the evidence, judgment notwithstanding the verdict should not be granted. If there is sufficient evidence to sustain the jury's verdict, judgment notwithstanding the verdict should not be granted." *Suburban,* 326 N.W.2d at 877. As our precedents in *Okken,* 325 N.W.2d at 267, and *Pioneer Fuels, Inc.,* 474 N.W.2d at 709, have explained, we must examine the trial record and apply the same standard the trial court had to apply.

[¶ 12] Binstock testified he had co-signed a house note with Douglas and Rena Binstock for $7,000 and did not remember co-signing one for $22,800. The former president of First State Bank in Regent testified Binstock guarantied two notes for Douglas and Rena, "one for 7,000 plus and one for approximately 13,000," and later these notes had been combined into a renewal note for $22,800.

[¶ 13] After FDIC took over the Bank, Binstock testified he "had to either find a different banker or they would have liquidated me." The smaller of Binstock's own notes was not due until March 27, 1990, and the larger one for $82,000, was dated June 12, 1989, was payable in monthly installments of $1,200.65, and had a maturity date of June 12, 1999. Binstock found another bank to "take over [his] debts" and then met with the FDIC agents on March 12, 1990.

[¶ 14] At the meeting, Binstock brought Douglas Binstock's house note to the attention of the FDIC:

Q. What did you tell them?

A. . . .

[T]hat's when I told them that I'm also a co-signor of the house of Doug. So, then he went back and he looked into the file, and he come back and he says, no, I guess you aren't.

And then later on when they [were] preparing all the thing, I told them again, I know I'm a co-signor of that house. Then he said, well, just a minute. So, they went back and they looked into Doug's files and they were in there for quite a spell. And then they come back and they said, no, you just don't worry about it, this is what we'll settle for, and then I said good.

Binstock repeated:

And then when I told them the second time I was a co-signor of that house, they went back there again, and when he come back he says, no, you aren't and don't worry about it, this is what we'll settle for.

Binstock testified he paid FDIC $85,812.93 that day to settle all his debts to the Bank, including a small debt he had co-signed with another child.

[¶ 15] Kenneth Schneck, one of the FDIC agents Binstock had dealt with on March 12, 1990, testified by deposition:

Q. Do you recall whether or not he requested either yourself or Brian to go look for notes that he may have co-signed?

A. That I don't know.

\* \* \* \* \* \*

Q. But if Mr. Binstock had said, and again I'm talking of Simon Binstock, that, "I co-signed on a note for Douglas Binstock," would you have been able to locate that note?

A. Yes.

Q. Is it, do you recall at all whether that search or inquiry was made by Mr. Binstock?

A. No. No, I don't recall.

\* \* \* \* \* \*

Q. Was the Douglas, Rena Binstock file readily available to you on that date?

A. It was certainly readily available to me while we were in Regent. The only record there, the only glitch in the records there was whether or not we knew that Simon Binstock was a guarantor.

Q. But he, if he told you that, you should have been able to locate the record?

A. Right.

Schneck offered no explanation why the agents were unable to find and act on the Douglas Binstock note from the Bank records, even without knowing the exact amount. The jury could have reasonably believed the FDIC agents had decided to waive payment of the Douglas note to get a prompt settlement with Binstock on the rest of his debts at the Bank.

 [¶ 16] "Although waiver and estoppel are closely akin, there are well-recognized distinctions between the two." *Peterson Mechanical, Inc. v. Nereson,* 466 N.W.2d 568, 571 (N.D.1991). "Waiver is a voluntary and intentional relinquishment or abandonment of a known advantage, benefit, claim, privilege, or right." *Hanson v. Cincinnati Life Ins. Co.,* 1997 ND 230, ¶ 13, 571 N.W.2d 363. "Estoppel arises apart from any intention on the part of the one estopped." *Peterson,* 466 N.W.2d at 571. "Estoppel involves conduct by both parties, and prejudice is one of the essential elements of estoppel, while waiver depends upon what one party intended to do, regardless of the other party." *Id.* Still, a waiver may be established either by an express agreement, or by inference from acts or conduct. *Hanson,* ¶ 13. For some examples of agreement by conduct, *see State Bank of Towner v. Rauh,* 288 N.W.2d 299, 305 (N.D.1980) (finding an oral guaranty from conduct of contracting party's "either stated 'yes' or acquiesced affirmatively to the statement by silence" when asked whether "the second deal was exactly like the first"); *Anderson v. American Standard Ins. Co.,* 293 N.W.2d 878, 883 (N.D.1980) (by his silence after notification, insured acquiesced in insurer changing the expiration date of insurance policy to coincide with the amount of premium insured actually paid); *Matter of Estate of Hedstrom,* 472 N.W.2d 454, 456 (N.D.1991) ("his acquiescence was sufficient evidence for the county court to conclude that he agreed"). As *Hanson,* ¶ 13, held, "[t]he existence or absence of waiver is generally a question of fact."

[¶ 17] The trial court instructed this jury that a waiver may be inferred from conduct that evidenced an intention to waive. *Sjoberg v. State Auto. Ins. Ass'n,* 78 N.D. 179, 48 N.W.2d 452, 453 (1951). Even if the actor's conduct was negligent, if the conduct lead the other person reasonably to believe that the actor agreed to waive, it legally permitted the jury to infer a waiver. *Id.*

[¶ 18] To give Binstock the benefit of all reasonable inferences from the evidence, and to preserve the jury verdict, we conclude the evidence here does not compel a different result. Reasonable persons could draw different conclusions from the evidence presented to the jury in this case, and the jury properly found FDIC agents had intentionally waived Binstock's guaranty to obtain payment of $85,812.93 from him to quickly settle all his debts to the failed Bank. We therefore conclude the evidence legally supported the jury's verdict of waiver, and the trial court did not abuse its discretion in denying Diversified's motion for judgment as a matter of law.

[¶ 19] We affirm the judgment and the order denying Diversified's motion for judgment as a matter of law.

[¶ 20] VANDE WALLE, C.J., and SANDSTROM, NEUMANN and MARING, JJ., concur.