# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

### 2019 ND 230

---

Teresa L. Larson, Janet F. Schelling,
and Lynette A. Helgeson,                                    Plaintiffs and Appellees

v.

Jon Tonneson, Mary Issendorf, in her
personal capacity and in her capacity as
the personal representative of the Estate of
Vesper Shirley, the Estate of Vesper Shirley,
and all other persons interested either as heirs,
creditors, or otherwise, in the estates of the
above-mentioned persons or entities, and all
other persons unknown, claiming any interest
in or encumbrance upon the property
described in the complaint,                                Defendants and Appellants

---

### No. 20180169

---

Appeal from the District Court of Bottineau County, Northeast Judicial District, the Honorable Anthony S. Benson, Judge.

AFFIRMED AND REMANDED.

Opinion of the Court by VandeWalle, Chief Justice.

James A. Teigland, Fargo, ND, for plaintiffs and appellees.

Michael S. McIntee, Bottineau, ND, for defendants and appellants.

**Larson v. Tonneson**

**No. 20180169**

**VandeWalle, Chief Justice.**

[¶1]    Jon Tonneson and Mary Issendorf, in her personal capacity and as personal representative of the estate of Vesper Shirley, ("defendants") appealed from a judgment quieting title to certain property in Teresa Larson, Janet Schelling, and Lynette Helgeson ("plaintiffs").  We conclude the district court did not clearly err in finding Larson, Schelling, and Helgeson acquired the disputed property by adverse possession.  We affirm the judgment but remand the case for entry of a corrected judgment.

I

[¶2]    The plaintiffs and defendants are successors in interest to certain property at Lake Metigoshe in Bottineau County.  The parties acquired their respective properties through their families beginning in the 1950s.  In 2012, the plaintiffs became aware of property boundary issues after a survey was conducted when plaintiffs were attempting to replace a mobile home on the property.  At that time, the plaintiffs also discovered a platted roadway ran through their property, though no such roadway existed on the property. The plaintiffs thereafter took steps to vacate the road.

[¶3]    In 2014, the Roland Township Board of Supervisors granted a petition to discontinue and vacate a portion of the platted roadway.  Landowners in the area also signed an easement covering the roadway actually in use by the owners and the public to ensure access to the various lots, which runs along the northern boundary of the subject property in this case.  While the plaintiffs were able to reach some boundary line agreements with neighbors, a dispute remained regarding ownership of the disputed property involved in this case.

[¶4]    The lake property at issue is within or adjacent to property platted in July 1950 as Larson's Beach Addition and is an irregularly-sized tract referred to at trial as

comprised of specific parcels making up the whole. The undisputed portion of the property is located along the shore of Lake Metigoshe. The 1950 plat for Larson's Beach shows the platted roadway—which the district court found had neither been opened nor used—running through the property from an easterly and westerly direction, as well as from a northwesterly direction. A small triangle of land located along the northwesterly edge of the parcel was referred to as the "Tonneson triangle." A larger triangle located along the northeasterly boundary of the parcel was called the "Issendorf triangle." The parties did not dispute plaintiffs' ownership of the largest part of the parcel along the southerly portion of the tract. Rather, the parties disputed ownership of the Tonneson triangle, the Issendorf triangle, and the platted roadway.

[¶5] In 2015, plaintiffs Larson, Schelling, and Helgeson commenced this action to quiet title to disputed portions of that property, claiming they had acquired title to the disputed property by adverse possession. They requested the district court to quiet title to the property in them and decree that the defendants had no estate or interest in, or lien or encumbrance upon, the property. The plaintiffs amended their complaint to include claims for the doctrines of agreed boundaries, acquiescence, and estoppel, and a claim for a prescriptive easement. The defendants Tonneson and Issendorf answered, alleging the plaintiffs were not owners of any property owned by them and requested the complaint be dismissed.

[¶6] On April 27 and 28, 2017, the district court held a bench trial on whether Larson, Schelling, and Helgeson had acquired the Tonneson triangle, the Issendorf triangle, and the platted roadway property by adverse possession. The court received exhibits and heard testimony from plaintiffs Larson and Schelling, defendants Tonneson and Issendorf, the parties' expert land surveyors, and Bottineau County employees. The court and the parties' attorneys also inspected the property.

[¶7] In its subsequent findings the district court detailed the activity of the plaintiffs, including their families and predecessors, on the property:

> Since the early 1960s there have been a total of three trailer homes placed on the property, with the 1964 trailer home being replaced by the 1993 mobile home. During the inspection of the property following

2

the trial, it was observed that there were no wheels on the axles of the two trailer homes on the property; however, neither were the trailer homes sufficiently attached to the land so as to become affixed to the real estate. There was cement poured for a mudroom which was attached to Janet's trailer, although the mud room is no longer there.

While there has been ordinary lawn maintenance, the Plaintiffs and their families also spent time and effort in removing trees and brush, so that the trailer homes could be placed, and the property used for its main recreational purpose at Lake Metigoshe. Primarily the property has been used in the summer months, but there was a period of time that the Plaintiffs also used it in the winter, for such activities as ice fishing and snowmobiling, as well as use during a family wedding in the winter. In addition to ordinary lawn care and removing trees and brush, there was also gravel put down on the property, both to provide a stable base for the trailer houses, as well as to maintain the road into the property and parking for vehicles. The Plaintiffs have used the property for storing large items, such as campers, lake toys and boats, and have put two storage sheds on the property, one in 1972 and one in 2005. The 1972 storage shed sits in part on the Issendorf triangle as well as on part of the platted roadway.

There was a well drilled into the property, and a fence erected by the well. There has also been a firewood shelf on the property, with cement being poured under the shelving unit. The Plaintiffs and their families have used the subject property, including portions of the platted roadway, the Tonneson triangle, and the Issendorf triangle as if it were their own property, since the early 1960's to the present. It is true that a portion of the Issendorf triangle is still in its wooded condition, and has not been cleared by the Plaintiffs or their families.

[¶8] In a December 2017 opinion, the district court quieted title to the property in Larson, Schelling, and Helgeson, finding the plaintiffs had acquired the disputed property by adverse possession under N.D.C.C. § 28-01-11. On March 2, 2018, the court entered its findings of fact, conclusions of law, and order for judgment, and judgment was entered. On March 12, 2018, defendants filed an objection to costs and disbursements. After further proceedings, the court entered an order regarding costs on April 27, 2018, and ordered a corrected judgment be entered.

[¶9] On May 3, 2018, Tonneson and Issendorf filed their notice of appeal in this Court, appealing from the March 2018 judgment. On May 4, 2018, one day after the

3

notice of appeal was filed, the district court entered purported "corrected findings of fact, conclusions of law, and order for judgment" and a "corrected judgment."

II

[¶10]   In an appeal from a bench trial, the district court's findings of fact are reviewed under the clearly erroneous standard of review, and its conclusions of law are fully reviewable. *Sauter v. Miller*, 2018 ND 57, ¶ 8, 907 N.W.2d 370; *Moody v. Sundley*, 2015 ND 204, ¶ 9, 868 N.W.2d 491. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, this Court is convinced a mistake has been made. *Sauter*, at ¶ 8; *Moody*, at ¶ 9.  "In a bench trial, the district court is the determiner of credibility issues and we will not second-guess the district court on its credibility determinations." *Sauter*, at ¶ 8.  "Findings of the trial court are presumptively correct." *W. Energy Corp. v. Stauffer*, 2019 ND 26, ¶ 5, 921 N.W.2d 431 (citing *Brash v. Gulleson*, 2013 ND 156, ¶ 10, 835 N.W.2d 798).

III

[¶11]   Tonneson and Issendorf argue that the district court erred in finding the plaintiffs acquired title to the Tonneson triangle, the Issendorf triangle, and the platted roadway by adverse possession.

[¶12]   Generally, N.D.C.C. § 28-01-07 provides a presumption against the adverse possession of real property "unless it appears that such premises have been held and possessed adversely to such legal title for twenty years before the commencement of such action."  Section 28-01-10, N.D.C.C., states: "When there has been an actual continued occupation of premises under a claim of title exclusive of any other right, but not founded upon a written instrument or upon a judgment or decree, the premises <u>actually occupied</u> and no other must be deemed to have been held adversely." (Emphasis added.)

4

[¶13] In this case, the district court found the plaintiffs established adverse possession of the disputed property under N.D.C.C. § 28-01-11, which provides:

> For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument nor upon a judgment or decree, land shall be deemed to have been possessed and occupied only in the following cases:
>     1. When it has been protected by a substantial enclosure; or
>     2. When it has been usually cultivated or improved.

[¶14] "To satisfy the elements for adverse possession, the acts on which the claimant relies must be actual, visible, continuous, notorious, distinct, and hostile, and of such character to unmistakably indicate an assertion of claim of exclusive ownership by the occupant." *Gruebele v. Geringer*, 2002 ND 38, ¶ 7, 640 N.W.2d 454; *see also Benson v. Feland Bros. Props.*, 2018 ND 29, ¶ 15, 906 N.W.2d 98; *Benson v. Taralseth*, 382 N.W.2d 649, 653 (N.D.1986); *Torgerson v. Rose*, 339 N.W.2d 79, 84 (N.D.1983); *Woodland v. Woodland*, 147 N.W.2d 590, 597 (N.D. 1966). "[A]ctual knowledge of the adverse possession is not necessary if there is a course of conduct directly hostile and these acts of hostility are 'unmistakably clear.'" *Benson*, 382 N.W.2d at 653. The person claiming property by adverse possession has the burden to prove the claim by clear and convincing evidence, and "every reasonable intendment will be made in favor of the true owner." *Gruebele*, at ¶ 8. "All of the elements must be satisfied, and if any elements are not satisfied the possession will not confer title." *Moody*, 2015 ND 204, ¶ 11, 868 N.W.2d 491. Whether an adverse possession has occurred presents a question of fact, which will not be reversed on appeal unless clearly erroneous. *Moody*, at ¶ 11; *Gruebele*, at ¶ 6.

IV

[¶15] Tonneson and Issendorf argue the district court erred in deciding the plaintiffs had acquired their interest in the platted roadway by adverse possession. They argue the court erred in finding the 20-year statutory period for the plaintiffs to adversely possess the platted roadway began to run before the township had vacated the dedicated public road in 2014. They contend, therefore, the plaintiffs could not have

taken the portion of the roadway belonging to the Tonneson and Issendorf families by adverse possession.

[¶16] This Court has long held that adverse possession cannot be obtained against a public entity under North Dakota law. *See, e.g., Smith v. Anderson*, 144 N.W.2d 530 (N.D. 1966)*; City of Jamestown v. v. Miemietz*, 95 N.W.2d 897 (N.D. 1959). In *Smith,* 144 N.W.2d at 534 (citations omitted), this Court stated, "The question that comes to mind at the outset is whether a municipality can be divested of title to its public streets and alleys by adverse possession. Our view is that it cannot." The Court in *Smith* then explained the basis for this "widely accepted rule":

> It has been said that the weight of authority supports the conclusion that title to public streets and alleys cannot be acquired by prescription.
>
> > * * * By the great weight of authority it is held that the rights of the public in a street or alley cannot be divested by adverse possession of another for the statutory period, unless the public use has been abandoned by competent authority and the land is held as proprietary property. Thus, no title can arise out of long-continued encroachment or obstruction of a public street or alley. Nor is it material that the adverse possession is of all of the street in question, instead of merely a part thereof.
> >
> > Accordingly, by the weight of authority, title to public streets and alleys cannot be acquired by prescription. In many of the states in which the opposite rule formerly prevailed, statutes have been enacted changing the law to conform to the majority view * * *.
> > 11 McQuillin, Municipal Corporations § 30.179, at 88-92 (3d ed. rev. 1964).
>
> The writers of American Jurisprudence call this view a widely accepted general rule:
>
> > Before it becomes material whether possession of a street, highway, park, square, or the like is adverse, the particular governmental body against whom the right is asserted must be subject to the running of the statute of limitations; the federal and state governments are not generally subject to the statute, and the tendency is to regard other governmental subdivisions in the same light, at least in regard to property held for public use. It is therefore a widely accepted general rule that the statute

6

> of limitations does not run in favor of those who occupy property of this character, and that no title can be acquired thereto by such occupancy, no matter how long it has been continued and whatever may have been its character. * * *
>
> 3 Am.Jur.2d Adverse Possession § 207, at 300 (1962).
>
> Although it is acknowledged by both texts referred to that there is authority to the contrary, we are convinced that the rule stated by the weight of authority is the correct one.

*Smith*, 144 N.W.2d at 534. While the above-quoted language from the 1964 *McQuillin* treatise has essentially been retained in the treatise's current version, the paragraph that follows in the current treatise is also instructive in this case:

> The wisdom of the statute forbidding the acquisition of lands appropriated to public use by adverse possession has been thoroughly justified by experience. However, in some jurisdictions, there are provisions recognizing or conferring title by adverse possession to streets or parts of streets in certain cases. Additionally, statutes providing that nonuse of streets for a designated period shall constitute an abandonment are not uncommon. Needless to say, the rules relating to adverse possession apply only to legally constituted streets or alleys.

11 Eugene McQuillin, *The Law of Municipal Corporations* § 30:166 (3d ed. 2018 rev. vol.) (footnotes omitted) (emphasis added).

[¶17] Courts have held that "[t]itle by adverse possession may be acquired to an alleged street where it has not been opened to public use, an offer to dedicate it has been made but not accepted, or it has been vacated, abandoned, or discontinued." 2 C.J.S. *Adverse Possession* § 23 (2013). Another legal encyclopedia explains:

> Where such highways have not been opened or used, in many jurisdictions, the general rule that highways cannot be lost through adverse possession applies while in other jurisdictions, when streets are laid out on a plat but are not so used by the public, they are nothing more than private ways and may be adversely possessed. Thus, in some states, title by adverse possession may be acquired relative to streets or parks that are unopened or unaccepted. In the absence of passage of title to the public, a public roadway is not created which would be immune from adverse possession. In some jurisdictions, title may be acquired by the adverse possession of land when its use as a highway has been abandoned or vacated.

7

3 Am. Jur.2d *Adverse Possession* § 261 (2013) (footnotes omitted) (emphasis added). Therefore, while adverse possession generally cannot be obtained against a public entity, title may nonetheless be acquired by adverse possession when a roadway has been unopened to public use, an offer to dedicate it has been unaccepted, or it has been vacated or abandoned. Moreover, "[w]here an abutting owner owns the fee or has private rights of any street, his or her title or rights, as distinguished from the rights of the public, may be acquired by adverse possession." 2 C.J.S. *Adverse Possession* § 23; *see also* 11 McQuillin § 30:167 ("The adverse possession of another for the statutory period may bar the title of an abutting owner, without regard to whether title is acquired as against the public.").

[¶18] In North Dakota, "[a]s a general rule and under our statutes a conveyance by an owner of land bounded by a street or a highway carries the fee to the center of the way unless the contrary is shown." *Welsh v. Monson*, 79 N.W.2d 155, 157 (N.D. 1956) (citing 11 C.J.S. *Boundaries* § 35); *see also* N.D.C.C. § 47-01-16 ("An owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown."). Section 47-10-10, N.D.C.C., provides:

> A transfer of land bounded by a highway, street, alley, or public right of way passes the title of the person whose estate is transferred to the soil of the highway, street, alley, or public right of way in front to the center thereof unless a different intent appears from the grant. Every conveyance of real estate, which abuts upon a vacated highway, street, alley, or other public right of way, shall be construed, unless a contrary intent appears, to include that part of such highway, street, alley, or public right of way which attaches either by operation or presumption of law, to such abutting real estate upon such vacation.

[¶19] Under N.D.C.C. § 24-06-01, a township board has "general supervision over the roads, highways, and bridges throughout the township." In circumstances where a township has laid out a road but fails to open the road within ten years, such an unopened road is statutorily declared vacant. *See* N.D.C.C. § 24-07-31 ("Any road or part thereof laid out by authority of . . . a board of township supervisors, and not opened to public use within ten years from the time when it was laid out, or which thereafter is abandoned and not used for ten years, hereby is declared vacant.").

8

Rather than a road laid out by a township, however, this case involves an unopened roadway dedicated in a 1950 plat.

[¶20] Here, the district court held that under our law, the 1950 plat containing the platted roadway constituted merely an offer by the owner to dedicate a roadway for public use. The court found, however, the evidence at trial showed that at least since the 1960s, no such roadway had ever existed or been used by the public. The court also noted the area landowners had signed an easement covering the roadway actually in use by the owners and the public to ensure access to the various lots, which runs along the north boundary of the subject property. The court thus found that "as to the platted roadway, there was no action by or on behalf of the public, or by the public authorities, to complete or accept the offer by the owner to dedicate such roadway for public use." Relying on *Welsh*, 79 N.W.2d at 158, the court concluded the platted roadway did not become a public right-of-way held by the township, but instead remained privately owned property and subject to an adverse possession claim.

[¶21] Tonneson and Issendorf argue the district court erred in relying on the *Welsh* case. They contend *Welsh* is inapplicable because the plat filed in this case included language dedicating the designated road for the public use and the parties recognized the public right to the property. We construe their argument essentially to challenge the court's finding there was no action by the public or public authorities to complete or accept the offer to dedicate the roadway for public use.

[¶22] This Court has recently examined the law regulating dedications in the platting of real property:

> Private land may be dedicated to public use in two ways, pursuant to statute and under the common law. Two distinctions separate the different types of dedication. First, the common law dedication operates by way of an equitable estoppel, whereas a statutory dedication operates by way of grant. Second, a common law dedication usually creates a mere easement, whereas in a statutory dedication the fee of the property is in the public.

*Winnie Dev. LLLP v. Reveling*, 2018 ND 47, ¶ 8, 907 N.W.2d 413 (quoting 11A McQuillin § 33:5 (3d ed. Supp. 2017)); *see also Becker v. Burleigh Cty.*, 2019 ND 68,

9

¶ 20, 924 N.W.2d 393. "Dedication arises when a private landowner sets aside land for public use." *Becker*, at ¶ 20. "Dedication may be express or implied, and may be established statutorily or by common law." *Id.* "A statutory dedication is in the nature of a grant, while a common-law dedication rests upon the principles of estoppel in pais." *Id.* (citations and quotation marks omitted).

[¶23] In *Welsh*, 79 N.W.2d at 158, this Court explained that the filing of the plat constitutes an offer by the owner to dedicate such streets and avenues to public use. "The dedication is completed by action on behalf of the public by use thereof or by some action of the public authorities." *Id.*; *see also Miemietz*, 95 N.W.2d at 902. "At common law, an offer to dedicate is not binding and there are no rights or duties connected with such an offer until it has been accepted." 26 C.J.S. *Dedication* § 38 (2011); *see also Ramstad v. Carr*, 31 N.D. 504, 527, 154 N.W. 195, 202 (1915) ("While there is a great deal of conflict in the authorities upon the question of whether an acceptance is necessary in the case of a statutory dedication, still we believe that the better and more prevalent rule is that an acceptance is necessary."). This Court has said an acceptance will generally be presumed when the dedicated property's use is shown to be beneficial, when all prescribed steps by statutory provisions governing dedication have been taken by the owner, or when public authorities "assign[] . . . hands to the maintenance and repair of such property." *City of Grand Forks v. Flom*, 79 N.D. 289, 294, 56 N.W.2d 324, 327 (1952) (quoting 26 C.J.S. *Dedication* § 45). Whether there is a dedication and an acceptance of the dedication are questions of fact. *See Benjamin v. City of Norwalk*, 153 A.3d 669, 677 (Conn. Ct. App. 2016) (quoting Meshberg v. Bridgeport City Trust Co., 429 A.2d 865 (Conn. 1980); *see also Winnie Dev.*, 2018 ND 47, ¶ 13, 907 N.W.2d 413; *Tibert v. City of Minot*, 2004 ND 97, ¶ 17, 679 N.W.2d 440.

[¶24] Here, on the basis of the evidence at trial, the district court specifically found the platted roadway did not become a public right-of-way held by the township because no action was taken by the public or public authorities to complete or accept the owner's offer to dedicate the roadway to public use. The court correctly

10

concluded that the roadway remained privately-owned property and subject to a claim for adverse possession. On this record, while the evidence shows the 1950 plat contains a platted roadway dedicated to public use, we conclude the court did not clearly err in its finding no action by the public or public authorities had been taken to complete or accept the offer to dedicate the roadway for public use. The court therefore did not err in holding the platted roadway was subject to an adverse possession claim.[1]

---

[1]We note that our decision in *Winnie Dev.*, 2018 ND 47, ¶ 9, 907 N.W.2d 413, is not dispositive in this case. In *Winnie Dev.*, we discussed the specific requirements for dedication by plat for a plat that the City of Horace approved on June 4, 1979, and was recorded on July 2, 1979. Specifically, the *Winnie* case applied N.D.C.C. § 40-50-04, as amended in 1979. *See* 1979 N.D. Sess. Laws ch. 451, § 3. This section stated in part: "Every plat, when duly certified, signed, and acknowledged, shall be filed and recorded in the office of the county register of deeds. No plat shall be recorded *until it is approved by the governing body affected by the plat* and a certificate evidencing such approval is presented to the register of deeds." N.D.C.C. § 40-50-04 (effective July 1, 1979) (emphasis added), *repealed by* H.B. 1342, 1987 N.D. Sess. Laws ch. 501, § 20; *see* N.D.C.C. § 40-50.1-03 (re-codifying N.D.C.C. § 40-50-04); *see also* N.D.C.C. § 40-01-01(3) (1983) ("[g]overning body" defined for title 40 as "the city council or the board of city commissioners, as the case may be, of a municipality concerned or affected"); N.D.C.C. § 40-01-01(4) (1983) ("[m]unicipal corporation" or "municipality" defined as including "all cities organized under the laws of this state, but shall not include any other political subdivision"). Under the law in 1979, it was clear the City was required to approve the plat before the plat could be filed with the register of deeds.

This case, however, involves a plat filed in the 1950s. Setting aside the question of whether the governing body involved here would be considered a municipality at the time for purposes of title 40, N.D.R.C. 1943 § 40-5004, provided in part: "After the plat or map has been completed, it shall be certified by the surveyor and the officers, if it is correct. No plat shall be recorded until it is approved by the engineer of the municipality affected by the plat, or if there is no such municipal engineer, by the county surveyor." On its face, this section required approval by the municipal engineer or county surveyor. Here, the district court made specific findings of fact that no action had been taken by the public or public authorities, necessarily including the township, to complete or accept the offer to dedicate the road to public use. Because the plat in this case was filed in the 1950s, it is not governed by the law in effect in the *Winnie* case.

11

[¶25]  Tonneson and Issendorf further rely on *James v. Griffin*, 2001 ND 90, 626 N.W.2d 704, to argue the 20-year adverse possession period for the portion of the platted road claimed by Tonneson and Issendorf began to run only after the township vacated the dedicated public road.  The *James* case, however, involves the principle of tacking to establish the 20-year period for a new boundary line by acquiescence between adjoining landowners.  "[W]hen tacking is relied upon to meet the 20-year period, it must result in a single continuous acquiescent possession." *James*, at ¶ 11. We explained that the temporary possession in a government entity did not relieve a party claiming acquiescence or adverse possession from showing the entity's possession was adverse to the true owner, to be tacked to satisfy the 20-year period. *Id.*

[¶26]  The Court in *James* ultimately held the 20-year period of acquiescence had been interrupted when the city briefly took title to the homeowners' property.  *James*, 2001 ND 90, ¶¶ 14-15, 626 N.W.2d 704.  Because no evidence showed the city recognized the claimed boundary, we held that the statutory period began to run when the city relinquished its title and that the homeowners could not establish acquiescent possession of the disputed area for the 20-year period.  *Id.*  The *James* case does not address adverse possession against a municipality of an unaccepted, unopened platted roadway.  Tonneson and Issendorf's reliance on this case therefore is misplaced.

[¶27]  We conclude the district court's findings that the offer to dedicate the platted roadway to public use was unaccepted and that the road was neither opened nor used by the public were not clearly erroneous.  We further hold the court did not err in concluding title to the unaccepted, unopened platted roadway could be acquired by adverse possession.

V

[¶28]  Tonneson and Issendorf argue the district court erred in finding adverse possession because the plaintiffs' use and occupation of the disputed property were

12

insufficient to establish the requisite elements for the statutory period.  They contend plaintiffs' use of the dedicated public right-of-way by placing a small fence, a shed, and temporary storage of recreational equipment for less than two years after the township vacated the platted road did not constitute a substantial enclosure or improvement of the property.  They claim plaintiffs' use of the northern portion's trees and bushes for privacy and dust control by leaving the property in a natural state did not constitute usage for adverse possession purposes.  They also argue that plaintiffs' erecting a second storage shed on the Tonneson property, only ten years before the filing of this action, did not meet the 20-year occupancy requirement and also that temporarily placing garbage cans on the Tonneson property for garbage pickup did not constitute an improvement to property and continuous usage.

[¶29]  While Tonneson and Issendorf dissect the specific findings that the district court found established the plaintiffs' occupation and use of the disputed property, it is the "combination of various acts" that may establish adverse possession.  *See* 3 Am. Jur.2d *Adverse Possession* § 26.  Generally, "[a]ll acts of a possessory nature by an adverse claimant are to be considered collectively, rather than independently, in determining the sufficiency of actual possession for purposes of an adverse possession claim."  *Id.*  As discussed, to establish adverse possession the claimants act's must be actual, visible, continuous, notorious, distinct, and hostile and of such character to unmistakably indicate an assertion of the occupant's claim of exclusive ownership.  *See Benson*, 2018 ND 29, ¶ 15, 906 N.W.2d 98; *Gruebele*, 2002 ND 38, ¶ 7, 640 N.W.2d 454.  In this case the plaintiffs claimed adverse possession under N.D.C.C. § 28-01-11(2), which provides that the "land shall be deemed to have been possessed and occupied only . . . [w]hen it has been usually cultivated or improved."

[¶30]  Here, the district court found that the plaintiffs' use and occupation of the property had resulted in the property being "usually cultivated or improved."  The court found their possession had been more than ordinary care and maintenance of the property.  The court found that since the 1960s the plaintiffs placed multiple trailers on the property; they cleared trees and brush; they added sheds to the property; they

13

added gravel as a base for the trailer homes and to maintain and improve the roadway into the property; they poured cement for a mud room on one trailer as well as for a base for a firewood shelf; and they added a well to the property. The court specifically found the conduct was more than simple maintenance and lawn care and, considering the nature and character of the lake property, satisfied N.D.C.C. § 28-01-11(2). The court found that the plaintiffs and their families have used the entire disputed property as if it were their own since the early 1960s to the present and that the plaintiffs' possession of the property had been continuous. The court's inspection of the disputed property also supports its fact finding regarding the disputed property.

[¶31] Tonneson and Issendorf argue that, even if this Court concludes the plaintiffs sufficiently cultivated and improved the disputed property, the plaintiffs are only able to claim the "shed area" under N.D.C.C. § 28-01-10, and plaintiffs have not provided a metes and bounds description of that area. We reject, however, such a narrow interpretation of N.D.C.C. § 28-01-10. The district court found the plaintiffs' use and occupation consisted of the entire area of disputed property.

[¶32] To the extent Tonneson and Issendorf argue the plaintiffs and predecessors in interest did not establish the requisite continuousness of their possession, we conclude the district court did not err in considering the character and nature of the disputed property. Courts have held a claimant's periodic activities on land may be sufficiently "continuous" to support an adverse possession claim when the activities "are consistent with the character of the land throughout the possessory period." *See* 3 Am. Jur.2d *Adverse Possession* § 69. "For example, the regular use of property as a summer home and for recreation purposes during summers can be continuous for a claim of adverse possession." *Id.* (citing *Kay v. Biggs*, 475 P.2d 1 (Ariz. Ct. App. 1970); *Mahoney v. Heebner*, 178 N.E.2d 26 (Mass. 1961); *Nechtow v. Brown*, 120 N.W.2d 251 (Mich. 1963); *Lee v. Raymond*, 456 A.2d 1179 (R.I. 1983); *Burkhardt v. Smith*, 115 N.W.2d 540 (Wis. 1962)); *see also Booten v. Peterson*, 288 P.2d 1084, 1086 (Wash. 1955) (disputed property's use as a "beach place and summer home" sufficient for adverse possession), *overruled on other grounds by Chaplin v. Sanders*,

14

676 P.2d 431, 436 n.2 (Wash. 1984); *Howard v. Kunto*, 477 P.2d 210, 213-14 (Wash. Ct. App. 1970) (rejecting "the conclusion that summer occupancy only of a summer beach home destroys the continuity of possession" because "the requisite possession requires such possession and dominion 'as ordinarily marks the conduct of owners in general in holding, managing, and caring for property of like nature and condition'"), *overruled on other grounds by Chaplin*, 676 P.2d at 436 n.2.

[¶33]   "Continuous use or possession therefore may be established notwithstanding seasonal breaks from the use of the property." 3 Am. Jur.2d *Adverse Possession* § 69. "[C]ontinuity may be maintained by intermittent or seasonal use of land which is primarily or obviously adapted to such use . . . .  It is enough that the land be devoted to the ordinary uses of the adverse claimant provided they are such as to put the true proprietor on notice." 3 C.J.S. *Adverse Possession* § 151 (footnotes omitted).  On this record, we conclude the district court did not err in finding the necessary continuous use and possession in consideration of the character and nature of the property as recreational lake property.

[¶34] Tonneson and Issendorf contend the district court erred in finding the plaintiffs' use of another's trees for privacy and dust control by leaving such property natural constitutes "usage" of those trees for adverse possession purposes.  While it has been acknowledged that "woodland" differs from other types of land, there must still be   some continuous acts of adverse possession.  *See Cuka v. Jamesville Hutterian Mut. Soc.*, 294 N.W.2d 419, 422-23 (S.D. 1980); 2 C.J.S. *Adverse Possession* § 40.   "Actual possession of a woodland, or wooded, unenclosed, undeveloped parcel, is established by residence or cultivation of a part of the tract of land to which the woodland belongs." 2 C.J.S. *Adverse Possession* § 40.  Although a wooded area need not be completely cleared before the statutory 20-year adverse possession period begins to run, "[i]t is only necessary that a continuous clearing takes place and that the land then be used for other suitable purposes." *Cuka*, 294 N.W.2d at 422.  "The possession need not be unceasing, but the evidence should be

15

such as to warrant the inference that the actual use and occupation have extended over the required period." *Id.* (citations and quotation marks omitted).

[¶35]  In this case, the district court specifically found the wooded area, while not cleared or disturbed, had in fact been used and possessed by the plaintiffs and their families since the 1960s and that they had maintained it in its natural condition for privacy from the common roadway, as a part of the "enhanced enjoyment" of the disputed property.  The physical location of the wooded area was also noted by the court and is significant.  The wooded property was on the plaintiffs' side of the road created by the consensual easement.  Gravel on that portion of the road was maintained by the plaintiffs.  Although minimal, the maintenance required for the wooded area included the occasional clearing of trees and brush, and was done by the plaintiffs.  While this may be a close case, the court's findings do support the notion of continuous use of the disputed property and as establishing privacy from the roadway actually in use.

[¶36]  The district court's findings are presumptively correct, and we will not second-guess the court on its credibility determinations.  There is evidence in the record that supports the district court findings that the plaintiffs and their predecessors used the property during the summer months and in the off-season.  From the evidence of the plaintiffs' acts supporting the district court's findings, we conclude it is clear they intended to claim title to all of the disputed area and to hold it as owner.  As the district court found, their possession of the disputed property for more than the statutory period was actual, visible, continuous, notorious, distinct, and hostile, and of such character to unmistakably indicate an assertion of claim of exclusive ownership.

[¶37]  On the basis of the record, we conclude the district court's findings were not induced by an erroneous view of the law, there is evidence in the record to support the findings, and we are not convinced a mistake has been made.  We affirm the district court's finding that the plaintiffs adversely possessed the disputed property.

16

## VI

[¶38] While we affirm the March 2018 judgment, we also address a jurisdictional issue regarding the district court's "corrected judgment" entered on May 4, 2018, one day after Tonneson and Issendorf filed their May 3, 2018, notice of appeal from the March 2018 judgment. We have explained:

> Generally, a district court loses jurisdiction when a notice of appeal is filed. The jurisdiction of the Supreme Court attaches upon the filing of the appeal, and generally the trial court has no further jurisdiction in the matter. Further, [a]n order or judgment entered by the trial court after an appeal has been filed is ordinarily void for lack of jurisdiction.

*CHS Inc. v. Riemers*, 2018 ND 101, ¶ 16, 910 N.W.2d 189 (quoting *Matter of S.E.*, 2012 ND 168, ¶ 9, 820 N.W.2d 389 (citations omitted)) (quotation marks omitted). In *CHS*, we vacated a corrected amended judgment because the district court lacked jurisdiction to enter it after the appeal was filed. *Id.*; *cf.* N.D.R.Civ.P. 60(a) ("But after an appeal has been docketed in the Supreme Court and while it is pending, such a mistake may be corrected only with the Supreme Court's leave.").

[¶39] Here, Tonneson and Issendorf appealed from the March 2, 2018, judgment, which we have affirmed. The district court entered the May 4, 2018 "corrected findings of fact conclusions of law and order for judgment" and "corrected judgment," which includes the plaintiffs' requested costs and disbursements. No issue regarding costs and disbursements was raised in the present appeal. However, because the district court was without jurisdiction to enter its corrected findings of fact, conclusions of law and order for judgment and corrected judgment, we remand the case only for the court to reenter them with jurisdiction.

## VII

[¶40] We have considered the remaining arguments and conclude they are either without merit or unnecessary to our decision. The March 2018 judgment is affirmed, but the case is remanded to the district court for entry of the corrected order and

corrected judgment, as contemplated under the district court's April 2018 order regarding costs and for corrected judgment.

[¶41] Gerald W. VandeWalle, C.J.
Daniel J. Crothers
Lisa Fair McEvers

**Tufte, Justice, concurring and dissenting.**

[¶42] I agree with the majority opinion except to the extent it affirms the district court's conclusion that one may adversely possess a neighboring landowner's trees by "using" them as a barrier to control dust and preserve privacy. Section 28-01-10, N.D.C.C., requires "actual continued occupation of premises" and extends adverse possession only to "the premises actually occupied and no other." Section 28-01-11, N.D.C.C., permits a finding that land has been possessed and occupied "only in the following cases: 1. When it has been protected by a substantial enclosure; or 2. When it has been usually cultivated or improved." The district court correctly found it "beyond dispute" that there is no substantial enclosure around the property. The case relied on by the majority in paragraph 34 does not support the district court's finding of adverse possession of the wooded area here. In *Cuka v. Jamesville Hutterian Mut. Soc.*, the South Dakota Supreme Court relied on a substantial enclosure in order to find adverse possession of both cultivated and uncultivated parts of the tract at issue there. 294 N.W.2d 419, 422-23 (S.D. 1980) ("The river in this instance was as much of a substantial enclosure as any fence or other boundary marker could have been.").

[¶43] Here, the district court found the wooded part of the Issendorf triangle was "kept in its natural condition," was "a natural barrier," and "Plaintiffs . . . did . . . choose not to disturb the natural condition of that part of the property." It went on to "acknowledge[] that portions of the Issendorf triangle remain in its naturally wooded state, and there has not been any clearing or improvements of that property." Despite these findings, the district court concluded it had been "used and possessed by the Plaintiffs . . . and the maintenance of it in its natural condition provided the Plaintiffs privacy from a common roadway, to their enhanced enjoyment of the property."

18

[¶44] If the statute permits a finding of adverse possession on this basis, the requirement of physical occupation demonstrated by a substantial enclosure, cultivation, or improvement has been all but eliminated.

[¶45] I respectfully dissent as to adverse possession of the wooded area that was left in its natural condition. I would remand for the district court to determine the boundary between the property that was actually occupied and the wooded area that was not.

[¶46] Jerod E. Tufte
Jon J. Jensen